# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RAVI RAMANATHAN, an individual,

    Plaintiff,

v.

SAXON MORTGAGE SERVICES, INC., a foreign entity; OCWEN LOAN SERVICING, LLC., a foreign limited liability company; DOES I through X, inclusive; ROE CORPORATIONS I through X inclusive,

    Defendants.

Case No. 2:10-CV-02061-KJD-LRL

**ORDER**

    Presently before the Court is Defendant Ocwen Loan Servicing, LLC's ("Ocwen") Motion to Dismiss (#8) and Request for Judicial Notice (#9), Defendant Saxon Mortgage Services, Inc.'s ("Saxon") Motion to Dismiss (#11), and Plaintiff's Oppositions to Defendant Ocwen's Motion to Dismiss (#10) and Amended Opposition (#13).

**I. Factual Background**

    Plaintiff had a mortgage through Saxon Mortgage Services, Inc. On October 21, 2009 Saxon sent Plaintiff a proposed modified loan agreement ("MLA"). The MLA indicated that Plaintiff was in arrears and offered Plaintiff a modified loan repayment schedule. To accept the MLA, Plaintiff had to sign and return the MLA on or before December 1, 2009 at or before 2:00 p.m. central time. (#9, Exh. 1 at 2). Plaintiff's failure to sign and return the documents by that date and time would void the MLA. Plaintiff did not sign the document until December 3. Notwithstanding these terms and his failure to abide by them, Plaintiff claims he believed the MLA would take effect on November 1, 2009. Plaintiff alleges that monthly payments were made under the terms of the MLA

but that Saxon continued to treat the loan as delinquent. Plaintiff alleges that Saxon transferred the loan to Ocwen Loan Servicing, LLC, on or about April 21, 2010. Plaintiff alleges that Ocwen also ignored the terms of the MLA. On September 29, 2010 Ocwen sent Plaintiff a letter demanding payment of all past due amounts owed on the mortgage and threatened to exercise its right to foreclose. Plaintiff seeks injunctive relief and recovery for breach of contract and breach of the covenant of good faith and fair dealing, and for a violation of the Real Estate Settlement Procedures Act ("RESPA") against Defendant Saxon.

## II. Standard for Motion to Dismiss

In considering a motion to dismiss for failure to state a claim under FRCP 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir.1998). Consequently, there is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir.1997) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Iqbal evaluation illustrates a two prong analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. Id. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. If the allegations state plausible claims for relief, such claims survive the motion to dismiss. Id. at 1950.

## III. Judicial Notice

"Nevada law allows a court to take judicial notice of facts that are (a) generally known within the territorial jurisdiction of the trial court; or (b) capable of accurate and ready determination by

resort to sources whose accuracy cannot reasonably be questioned, so that the fact is not subject to reasonable dispute." Birkland v. Silver State Financial Services, Inc., 2010 U.S. Dist. LEXIS 88471, 2 (9th Cir. 2010). Additionally, "a court may take judicial notice of documents that are incorporated by reference into, although not attached to a complaint if: (1) the complaint refers to the document, (2) it is central to the plaintiff's claims, and (3) the authenticity of the document is not disputed." Id. Courts "may consider certain materials that are either attached or incorporated by reference in the complaint as well as matters of judicial notice without converting a motion to dismiss into a summary judgment motion." Four Seasons Hotel Las Vegas v. Get-A-Way Travel, Inc. 2006 WL 1877128, 3 (D.Nev. 2006) See also U.S.A. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). "Defendants may offer such a document, and the district court may treat such a document as part of the complaint and thus may assume its contents are true for purposes of a motion to dismiss under rule 12(b)(6)." Id. A Plaintiff cannot attempt to survive a rule 12(b)(6) motion by deliberately omitting references to documents upon which their claim is based. Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).

Defendant Ocwen requests that the Court take judicial notice of the MLA (#9 Exh. 1). Plaintiff's claims for relief center around the purported validity of this document. Plaintiff's complaint relies on, and extensively references the MLA. Plaintiff does not dispute the authenticity of, or oppose the admission of the MLA in any of its responsive pleadings. Therefore, the Court takes judicial notice of the MLA.

**IV.  Breach of Contract**

"The essential elements of a valid contract include offer, acceptance, and bargained for consideration." D'Angelo v. Gardner, 819 P.2d 206  (Nev. 1991). Nevada courts still maintain that a cause of action for a breach of contract are where the parties show: "(1) a valid and existing contract, (2) performance by the Plaintiff, (3) Defendant's failure to perform and (4) show damages." Calloway v. City of Reno, 993 P.2d 1259 (Nev. 2000).

3

1    Here, the MLA was an offer by Saxon to modify Plaintiff's existing mortgage agreement.
2    The proposed contract prescribed the manner of acceptance: the MLA should be signed, notarized,
3    and "[t]he documents should be returned with sufficient time to arrive at Saxon on or before
4    12/01/2009, at or before 2:00 p.m. central time." (#9, Exh. 1 at 2).  The MLA warned: "IF YOU
5    FAIL TO RETURN THE DOCUMENTS AND DEPOSIT BY THE TIMES INDICATED, SAXON
6    WILL ASSUME YOU ARE NO LONGER INTERESTED IN A MODIFICATION AND WILL
7    CONSIDER THE MODIFICATION AGREEMENT TO BE VOID AND OF NO FURTHER
8    EFFECT."  (Id., capitalization in original).

9    In this case, Plaintiff asserts that the MLA was "executed" by Plaintiff on or about October
10   21, 2009.  (#1, Exh. A ¶ 7).  The signature and notary mark indicate that Plaintiff did not sign the
11   MLA until December 3, 2009.  (#9).  The UPS tracking detail shows that the package was not
12   delivered until December 4, 2009.  (#9, Exh. 1 at 13).  The unambiguous terms prescribing
13   acceptance of the offer show that Plaintiff did not validly accept Defendant's offer for a loan
14   modification.  Plaintiff has not plead other facts indicating the existence of an agreement.  Since
15   there was no timely acceptance of the offer, there was no valid contract and no agreement.

16   **V.  Breach of Covenant of Good Faith and Fair Dealing**

17   An implied covenant of good faith and fair dealing exists to prevent one party from unfairly
18   frustrating the other party's right to receive the benefits of the agreement actually made.  Patriotic
19   Science Corp. v. Korodi, 504 F. Supp. 2d 952, 963-964 (9th Cir. 2007).  There can be no claim for
20   breach of implied covenant of good faith and fair dealing if there is not an enforceable contract
21   provision or breach thereof.  Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2 Cal. App. 4th 342,
22   374-375 (9th Cir. 1992).

23   As discussed above, the MLA upon which Plaintiff relies was not a valid contract.  Plaintiff's
24   claim for breach of the implied covenant of good faith and fair dealing also fails.

25
26

## VI. Injunctive Relief

"To obtain injunctive relief the Plaintiff must show that he is: (1) likely to succeed on the merits, (2) likely to suffer irreparable harm in absence of injunctive relief; and (3) that the balance of equities tips in his favor, and the injunction is in the public interest." Winter v. NRDC, 129 S.Ct. 365 (2008). The Court has held that a preliminary injunction will not be issued simply to prevent the possibility of some remote further injury." "A preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." Id. at 375 (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 139 (2d ed.1995)). " Injunctive relief is an extraordinary remedy and may only be awarded upon clear showing that Plaintiff is entitled to such relief." Id. at 376.

Plaintiff states that Ocwen sent him a notice of foreclosure, and claims that he will suffer irreparable harm if the foreclosure is not enjoined. Defendant Ocwen submitted a public document from the County Recorder's office showing that no foreclosure actions have been filed against Plaintiff's property. (#9, Exh. 2). Ocwen's letter indicating its right to foreclose if arrearages are not paid is insufficient to show a likelihood of irreparable harm.

Plaintiff has alleged no plausible facts to show the existence of a valid contract with Defendants. Ocwen's letter was merely informative and no foreclosure actions have been taken. Plaintiff is unlikely to succeed on the merits and is not in imminent danger of irreparable harm.

## VII. RESPA

The United States Code Service 12 U.S.C. §2605(e) requires a loan servicer to respond to borrower inquiries. Section (e)(1)(A) states that if any servicer of a federally regulated mortgage loan receives a qualified written request ("QWR") from the borrower for information relating to the servicing of such a loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days.

Plaintiff claims that Defendant Saxon transferred the mortgage loan account to Ocwen on or around April 21, 2010. Plaintiff sent a QWR to Defendant Saxon on June 1, 2010 (#1 at Exh. A ¶

38). Plaintiff's June 1 letter was not sent to Ocwen who was then the servicer of the loan, but to Saxon, the former servicer. Because Saxon was not the servicer of the loan at the time the letter was sent it was not obligated to respond. Plaintiff has dismissed the RESPA claim against Defendant Ocwen, and his claim against Saxon fails.

### VIII. Leave to Amend

The pleadings and judicially noticed documents fail to demonstrate the existence of a valid contract. However, the Court will grant Plaintiff leave to amend the complaint with detailed allegations of any "facts and circumstances" (#10 at 7) supporting the existence a contract between Plaintiff and Defendants.

### IX. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendant Ocwen's Motion to Dismiss (#8) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Saxon's Motion to Dismiss (#11) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff has 10 days from the date of this Order to file an Amended Complaint.

DATED this 24th day of June 2011.

_____
Kent J. Dawson
United States District Judge