**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RAVI RAMANATHAN,<br><br>    Plaintiff,<br><br>v.<br><br>SAXON MORTGAGE SERVICES, INC., *et al.*,<br><br>    Defendants. | Case No. 2:10-CV-02061-KJD-VCF<br><br>**ORDER** |

Before the Court is the Motion to Dismiss (#22) filed by Defendant Saxon Mortgage Service (Saxon). Plaintiff filed an opposition (#33). Also before the Court is the Motion to Dismiss (#23) filed by Defendant Ocwen Loan Servicing ("Ocwen"). Plaintiff filed an opposition (#34) and Ocwen filed a reply (#35) to which Saxon joined (#36).

<u>I. Background</u>

Plaintiff has a mortgage on a property at 2287 Buckingham Court, Henderson, Nevada. Plaintiff fell behind in his payments in July 2009. On October 21, 2009 Saxon, the loan servicer, sent Plaintiff a proposed Loan Modification Agreement ("LMA"). This document contained a cover

letter stating that Plaintiff's request for a loan modification had been approved and provided instructions on the requirements and process to enter into the LMA.  The cover letter instructed Plaintiff to sign and return two copies of the LMA, stated that the monthly payment amount of $4,216.78 was due on the first of each month starting with December 1, 2009, and required payment of an escrow deposit of $5,152.12.  Finally, the cover letter stated that to accept the LMA, Plaintiff had to sign and return the LMA and deposit before 2:00 p.m. central time, December 1, 2009. (Request for Judicial Notice Dkt. #9, Exh. 1 at 2).  The LMA warned: "IF YOU FAIL TO RETURN THE DOCUMENTS AND DEPOSIT BY THE TIMES INDICATED, SAXON WILL ASSUME YOU ARE NO LONGER INTERESTED IN A MODIFICATION AND WILL CONSIDER THE MODIFICATION AGREEMENT TO BE VOID AND OF NO FURTHER EFFECT." (Id., capitalization in original).

Plaintiff did not comply with these terms.  Instead, on December 3, Plaintiff signed the LMA, had it notarized, and remitted the $5,152.12 deposit requested in the cover letter.  Plaintiff did not make the $4,216.78 payment on December 1, 2009 as required by the terms of the LMA.  Plaintiff did not make payments on the first days of February, March, or April as required by the LMA.

Saxon transferred servicing rights to Ocwen on April 21, 2009.  Plaintiff has now provided the Court with a copy of the LMA showing that on April 22, 2010 the LMA was countersigned by Marla White, a representative of Saxon acting as attorney-in-fact for the lender and trustee. (#33 Exh. 1 at 5.)  On April 28, 2010, Plaintiff was notified that mortgage servicing rights had been transferred to Ocwen.  He was instructed not to make any further payments to Saxon.  On that same day, Plaintiff's wife made a payment to Saxon of $4,217.78 – one dollar more than the amount specified in the cover letter of the LMA.  Plaintiff's wife made further payments to Saxon on May 27, 2010, and June 29, 2010.  Plaintiff's wife also made payments to Saxon on July 28, 2010, but this payment was returned to Plaintiff.  In returning the payment, Saxon reiterated that it no longer serviced the loan and would no longer forward the payments to Ocwen.

In August and September, Plaintiff's wife sent Ocwen a check for $4,217.78. Ocwen returned the September payment, stating in a letter that the amount was "insufficient to cure default" and that "no alternative payment arrangements have been agreed to." The letter further stated that Plaintiff's payments would not stop any foreclosure proceedings.

Plaintiff filed a suit in state court and Saxon removed it here. On June 24, 2011 the Court issued an Order (#18) dismissing Plaintiff's original complaint for failure to state a claim and gave Plaintiff ten days to file an amended complaint. Plaintiff filed an Amended Complaint on July 7, 2011.

I.  Discussion

    A.  Legal Standard for Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Iqbal evaluation illustrates a two prong analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. Id. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. If the allegations state plausible claims for relief, such claims survive the motion to dismiss. Id. at 1950.

    B.  Breach of Contract

To state a claim for breach of contract in Nevada, a Plaintiff must demonstrate (1) the existence of a valid contract, (2) that plaintiff performed or was excused from performance, (3) that the defendant breached, and (4) that the plaintiff sustained damages. See Calloway v. City of Reno, 1993 P.2d 1259, 1263 (2000). Basic contract principles require, for an enforceable contract, an offer

and acceptance, meeting of the minds, and consideration." May v. Anderson, 121 Nev. 668, 672, 119 (2005).

### 1. Breach of the Original LMA

Defendants argue that there is no valid contract because Plaintiff failed to comply with the instructions to accept the LMA as provided in the cover letter. Specifically, Plaintiff was required to return two copies of the LMA by December 1, 2009, 2:00 PM central time, together with a $5,152.12 deposit. Saxon warned that if Plaintiff did not return the documents and deposit by that time, it would consider the agreement "to be void and of no further effect." Defendant's contend that Plaintiff did not comply with the instructions to accept the LMA. Defendants argue that Plaintiff cannot show the existence of a valid contract. Plaintiff asserts that the LMA was "executed" by Plaintiff on or about October 21, 2009. Plaintiff offers no evidence to support this contention. In fact, two of Plaintiff's three signatures and the notarial certificate on the LMA indicate that Plaintiff did not sign the LMA until December 3, 2009. (#9 Exh. 1 at 2.) The UPS tracking detail shows that the package with the LMA and deposit was not delivered until December 4, 2009. (#9, Exh. 1 at 13.) Plaintiff did not validly accept the LMA offered by Saxon and does not state a claim for breach of the LMA as originally offered.

### 2. Counteroffer and Acceptance

Nevada courts have held that when an offer has expired, "late or defective acceptance is a counteroffer which must in turn be accepted by the original offeror to create a contract." Morrison v. Rayen Investments, Inc., 97 Nev. 58, 60 (1981)(finding that late acceptance of offer to purchase land was counteroffer that was not accepted).

Plaintiff avers that he made a counteroffer for loan modification when he sent the LMA to Saxon with a deposit on December 3, 2009. Plaintiff argues that Saxon intentionally accepted the counteroffer when it accepted the deposit sent by Plaintiff, countersigned the LMA on April 22, 2010, and accepted mortgage payments in April, May, and June. Plaintiff states that his payments or attempts to pay constitute performance on his part.

4

Determining the existence of a contract is a mixed question of law and fact. <u>U.S. ex. rel Youngstown Welding and Engineering Co. v. Travelers Indem. Co.</u>, 802 F.2d 1164, 1169 (9th Cir. 1986). The Amended Complaint avers that Saxon transferred the servicing rights to Plaintiff's loan to Ocwen on April 21, 2010. Plaintiff was informed that the servicing rights had been transferred as of April 21, 2010. Defendants instructed Plaintiff to pay Ocwen and not Saxon. Plaintiff offers no explanation for how Saxon could authorize a modification on April 22, 2010 – after it had transferred the rights to the loan. Plaintiff also does not explain why he continued to pay Saxon instead of Ocwen when Plaintiff was informed of the change in servicers. However, at the pleading stage, the Court cannot determine whether Plaintiff's late acceptance operated as a counteroffer or whether the offer could have been accepted when Saxon countersigned the document and accepted payments.

### 3. Consideration

It is axiomatic that giving a party something to which he has an indisputable right is not consideration. <u>See</u>, e.g., <u>Salmeron v. U.S.</u>, 724 F.2d 1357, 1362 (9th Cir.1983).

Defendants argue that the contract is invalid because there was no consideration for the modification since Plaintiff had a preexisting duty to repay his mortgage. Defendants argue that any funds sent by Plaintiff were less than the amount he was in arrears. Defendants also point to the express terms of the mortgage which state that acceptance of partial payment does not constitute a waiver or preclude any right or remedy. Plaintiff argues that the $5,152.12 deposit was an advance of funds that Plaintiff was not required to pay at that time. According to Plaintiff, this deposit was consideration for the modification.

The complaint is not clear about whether the deposit was applied to the amount Plaintiff owed under the Note and Deed of Trust. (See #21 at ¶ 39-41.) Loan modification agreements are common and Defendants fail to cite a Nevada case holding that an advance of the type Plaintiff provided cannot constitute consideration for modification of a residential mortgage contract. The Court cannot determine at this phase of the litigation that, as a matter of law, the alleged modification agreement is void for lack of consideration.

### 4. Statute of Frauds

The statute of frauds in N.R.S. 111.220 provides in relevant part:

> In the following cases every agreement is void, unless the agreement, or some note or memorandum thereof expressing the consideration, is in writing, and subscribed by the person charged therewith:
>
> 1. Every agreement that, by the terms, is not to be performed within 1 year from the making thereof...
>
> 4. Every promise or commitment to loan money or to grant or extend credit in an original principal amount of at least $100,000 made by a person engaged in the business of lending money or extending credit.

A writing need not supply all terms of the agreement, as long as the essential terms are present. Georgiou Studio, Inc. v. Boulevard Invest, LLC, 663 F.Supp.2d 973, 980 (D.Nev. 2009).

On April 22, 2010 the LMA was countersigned by Marla White, a representative of Saxon Mortgage acting as attorney-in-fact for the lender and trustee. (#33 Exh. 1 at 5.) This document contains all the essential terms of the agreement including the subject property, the amount, the monthly payment, and the duration of the mortgage. Assuming that the LMA is a valid contract in other ways, as a matter of law, it complies with the statute of frauds

Plaintiff's Amended Complaint meets the pleading requirements by alleging the existence of an offer, acceptance, meeting of the minds, and consideration. The Complaint and judicially noticeable documents also indicate compliance with the statute of frauds. Accordingly, Plaintiff's Breach of Contract claim survives.

### C. Promissory Estoppel

To establish a claim for promissory estoppel, four elements must exist: (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must have relied to his detriment on the conduct of the party to be estopped. Pink v. Busch, 100 Nev. 684, 691 P.2d 456,

459-60 (1984). In general, the party claiming estoppel must specifically plead all facts relied on to establish its elements. Nevada Nat. Bank v. Huff, 94 Nev. 506, 582(1978).

Defendants argue that Plaintiff cannot claim promissory estoppel since he has not relied to his detriment on the alleged promise to modify his loan. According to Defendants, any payments Plaintiff made on his mortgage were not to his detriment because he is in arrears, is obligated by the original Note and Deed of Trust to pay, and has been allowed to stay in his home. The pleadings do not make clear what became of the deposit and payments Plaintiff made. (See #21 at ¶ 39-41.) If the payments were not applied to the arrearage or mortgage, then Plaintiff's alleged reliance may have been to his detriment. However, if the funds paid by Plaintiff were applied to the mortgage pursuant to the Note and Deed of Trust, Plaintiff's claim for promissory estoppel is not valid because Plaintiff cannot show detrimental reliance. Accordingly, the Court cannot dismiss the promissory estoppel claim.

### D. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing

Tortious breach of the implied covenant of good faith and fair dealing cannot be maintained absent a special relationship between the parties. A.C. Shaw Const., Inc. v. Washoe County, 105 Nev. 913, 915, 784 P.2d 9, 10 (Nev. 1989). The tort action is limited to "rare and exceptional cases." See Id. There must exist a special relationship of trust and reliance between the tort victim and the tortfeasor. Nevada courts have recognized this type of reliance in various relationships, including those formed by employment, bailment, insurance, and partnerships. Id. Nevada courts do not recognize this type of special relationship in the residential mortgage context. See, e.g. Cascade Investments, Inc. v. Bank of America, N.A., S.A., 2000 WL 1842945, *2 (D.Nev. 2000) (no special relationship between bank and debtors).

Plaintiff's allegation that the Defendants breached a special relationship between Plaintiff and Defendants fails as a matter of law because Nevada does not recognize special relationships between the servicer of a loan and the borrower. Accordingly, Plaintiff's third claim for tortious breach of the implied covenant of good faith and fair dealing is dismissed.

1      E.  Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing

2      "Every contract imposes upon each party a duty of good faith and fair dealing in its
3 performance and its enforcement." A.C. Shaw Const., Inc. v. Washoe County, 784 P.2d 9, 10 (Nev.
4 1989). Where one party to a contract "deliberately countervenes the intention and spirit of the
5 contract, that party can incur liability for breach of the implied covenant of good faith and fair
6 dealing." Hilton Hotels Corp. v. Butch Lewis Prods., Inc. 808 P.2d 919, 923-24 (Nev. 1991). The
7 question of good faith is a question of fact. A.C. Shaw, 784 P.2d at 11. "When one party performs a
8 contract in a manner that is unfaithful to the purposes of the contract and the justified expectations of
9 the other party are thus denied, damages may be awarded against the party who does not act in good
10 faith." Hilton Hotels, 808 P.2d 923-24.

11      Defendants argue that since no contract exists, there can be no breach of the implied
12 covenant. This argument begs the question at issue in this case – whether there was a modification.
13 Plaintiff's complaint avers the existence of a contract and alleges that Defendants deliberately
14 breached the contract when they rejected Plaintiff's loan payments and issued a notice of default. If
15 these facts are proven, Plaintiff could prevail on this claim. Accordingly, the Amended Complaint
16 states a cognizable claim for contractual breach of the covenant of good faith and fair dealing.

17      F.  Fraud Based Claims

18      Plaintiff has pled fraudulent inducement by Saxon, and negligent and intentional
19 misrepresentation against both Defendants. These causes of action sound in fraud. Fed. R. Civ. P.
20 9(b) states that a party asserting a claim for fraud "must state with particularity the circumstances
21 constituting fraud." The essential elements of fraud are a false representation made by the defendant,
22 knowledge or belief on the part of the defendant that the representation is false or, that he has not a
23 sufficient basis of information to make it, an intention to induce the plaintiff to act or to refrain from
24 acting in reliance upon the misrepresentation, justifiable reliance upon the representation on the part
25 of the plaintiff in taking action or refraining from it, and damage to the plaintiff, resulting from such
26 reliance . . ." Stearns' Properties v. Trans-World Holding Corp., 492 F.Supp. 238, 242 (D.Nev.

1980)(citations omitted).  The elements for negligent misrepresentation are similar but do not require the same level of intent.  Barmettler v. Reno Air, Inc., 114 Nev. 441 (1998).

Plaintiff's Amended Complaint sufficiently states facts, which if proven, give rise to the fraud based claims.  Plaintiff's allegations are that Saxon intended to induce Plaintiff to make payments pursuant to the LMA that it did not intend to honor.  Plaintiff also claims that both Defendants rejected payments and that Ocwen threatened to initiate foreclosure proceedings while Plaintiff was relying upon the representations in the LMA.  These representations are manifested in the LMA and other correspondence from Defendants.  The fraud based claims are sufficiently stated and cannot be dismissed based on the pleadings.

G.  Unjust Enrichment

Under Nevada law, unjust enrichment occurs when "a person has and retains a benefit which in equity and good conscience belongs to another." Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975, 942 P.2d 182, 187 (Nev.1997).  An action "based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." Id. The doctrine of unjust enrichment thus only "applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." Id. (quoting 66 Am.Jur.2d Restitution § 11 (1973)).

Plaintiff states a narrow claim for unjust enrichment.  If the Note and Deed of Trust govern the relationship, Plaintiff cannot claim unjust enrichment.  Similarly, Plaintiff cannot claim unjust enrichment if the counteroffer was accepted and the LMA governs the relationship.  Only if the Plaintiff proves an implied agreement – including showing detrimental reliance by failure of the Defendants to apply the payments to the loan – could he prove unjust enrichment.  Because it is unclear whether the Defendants applied the deposit and payments made by Plaintiff to the mortgage, the Court cannot say as a matter of law whether Saxon and Ocwen were unjustly enriched.  Accordingly, this claim survives.

H. Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692.  The FDCPA makes it unlawful for debt collectors to use abusive tactics while collecting debts for others. The FDCPA defines a debt collector as "any person ... who regularly collects or attempts to collect ... debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" does not include:

> [A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6)(G). The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, **as long as the debt was not in default at the time it was assigned.** [Emphasis added]. See S.Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S.Code Cong. & Ad. News 1695, 1698.  Mortgage servicers who obtain the right to service a loan after it is in default may be considered debt collectors for some purposes.[1]  An opinion letter from the Federal Trade Commission dated April 25, 1989 states "[a] mortgage servicing company that collects on a debt that was in default at the time the account was obtained is ... a 'debt collector' with respect to that account, and must comply with the FDCPA." See FTC Staff Opinion Letters, Cranmer (04-25-89). Courts have consistently rejected the argument that the FDCPA can never apply to loan servicing companies.  See, e.g. Cavil v. Trendmaker Homes, Inc.,  2010 WL 5464238, 5 (S.D.Tex. 2010) (FDCPA claim could not be dismissed because it was unclear whether loan servicer obtained servicing rights while loan was in default); Rine v. Ocwen Loan Servicing, LLC,  2011 WL 1327358,

---

[1] The FDCPA does not apply to a non judicial foreclosure proceeding because such proceedings are not an attempt to collect a "debt" for the purposes of the statute. See, e.g., Hulse v. Ocwen Fed. Bank, 195 F.Supp.2d 1188, 1204 (D.Or.2002). See also Contreras v. Master Financial, Inc., No. 3:10-cv-0477-LRH-VPC, 2010 U.S. Dist. LEXIS 118017*6 (D.Nev. Nov. 4, 2010).  Here, foreclosure proceedings have not yet started.

4 (W.D.Mich. 2011) (no dismissal of FDCPA claim against servicer who obtained right to service loan that may have been in default).

The pleadings indicate that Plaintiff stopped paying his mortgage in July of 2009. The rights to service the loan were transferred to Ocwen on April 21, 2010. The LMA was allegedly countersigned on April 22, 2010. Plaintiff may be able to show that he was in default when Ocwen acquired the servicing rights. Ocwen refused to accept payment and communicated with Plaintiff several times regarding his loan. Because Plaintiff's loan may have been in default at the time it was obtained by Ocwen, the Court cannot say as a matter of law that Ocwen's activities are exempt from the FDCPA. Accordingly, the FDCPA claim survives.

III. Conclusion

**IT IS HEREBY ORDERED** that Defendant Saxon Mortgage Service's Motion to Dismiss (#22) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant Ocwen Loan Servicing's Motion to Dismiss (#23) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Plaintiff's claim for tortious breach of the implied covenant of good faith and fair dealing is **DISMISSED**.

DATED this 21st day of December 2011.

_____
Kent J. Dawson
United States District Judge

11